**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **GARY JOHNSON** | : | **CIVIL ACTION** |
| | : | |
| **v.** | : | |
| | : | |
| **FRANKLIN TENNIS,** | : | |
| **ET AL.** | : | **NO. 05-778** |
| | : | |
| | : | |
| **Norma L. Shapiro, S.J.** | : | **March 12, 2007** |

### MEMORANDUM & ORDER

Petitioner Gary Johnson filed a *pro se* petition for a writ of *habeas corpus* pursuant to 28 U.S.C. §2254. United States Magistrate Judge Thomas J. Reuter entered a Report and Recommendation ("R&R") recommending that the petition be denied. Johnson, now represented by counsel, filed timely objections to this R&R. For the reasons discussed in this Memorandum, the R&R is approved, and the petition is denied.

### I.    Background and Procedural History

On January 21, 1991, Petitioner and co-conspirator, Shawn Davis, arrived at a North Philadelphia after-hours club around 2 a.m. At approximately the same time, the victim, Alphonso Broadnax, and Antoine DeLoach, accompanied by two females, arrived at the club. Shortly thereafter, Petitioner and DeLoach bumped into each other on the dance floor and exchanged intemperate words. Davis approached the altercation; he kept his hand in his pocket as if gesturing that he possessed a weapon. Broadnax approached, and DeLoach expressed concern that Davis might have a weapon. The tension diffused quickly, and the parties parted ways on seemingly good terms. Commonwealth v. Johnson, No. 900EDA 2003, slip op. at 1 (Pa. Super.

Apr. 13, 2004); <u>Commonwealth v. Johnson</u>, No. 3393, 3397, Feb. Term 1991, slip op. at 5 (C.P.Phila. Oct. 30, 1995) (the "Trial Ct. Op.").

DeLoach, Broadnax and the two female companions decided to leave the club because they feared trouble between the parties after witnessing an altercation between Davis and another man. DeLoach and the two females stopped at the restroom as Broadnax headed towards DeLoach's vehicle, parked across the street from the club. At approximately the same time, Desiree Feaster, Sharon Johnson, Michele Green and Vernell Washington were entering Feaster's car, parked by the club. They observed Petitioner and a man wearing an eight-ball jacket, later revealed to be Davis, in the same area. At that time, Washington overheard a conversation between Petitioner and Davis about wanting "the guy with the money." Trial Ct. Op. at 6, citing N.T. 12/11/91 at 126.

As Petitioner and Davis passed Feaster's vehicle, the witnesses observed Davis holding a gun behind his back as he headed in the direction of Broadnax, who was then about to enter DeLoach's vehicle. Davis shot the victim, Broadnax, five times. Davis and Petitioner then ran from the scene.

Prior to trial, the Honorable Robert A. Latrone of the Philadelphia Court of Common Pleas heard argument on co-defendant Davis' pretrial motion to suppress his statement made to police. During argument, Petitioner's counsel requested the statement be redacted prior to disclosure to the court to protect his client's Constitutional rights. N.T. 11/4/91, at 61. The judge ordered the prosecutor to redact Davis' statement, prior to its presentation to the court, by putting an "X" in for Petitioner, an accepted procedure in Pennsylvania at that time.[1] The redacted statement, which

_____

[1]<u>See</u> <u>Commonwealth v. Lee</u>, 541 Pa. 260 (1995).

-2-

inculpated Petitioner, was then heard by the judge and admitted against the co-defendant at the joint bench trial.  N.T. 12/12/91, at 53.

Following the non-jury trial before Judge Latrone, Petitioner was found guilty of murder in the second degree[2] and criminal conspiracy[3].  Post-verdict and supplementary motions were timely filed and argued.  On February 9, 1995, the trial judge, after issuing a lengthy opinion on the sufficiency of the evidence and other post-trial motions, denied the post-verdict motions and sentenced Petitioner to a mandatory term of life imprisonment on the felony-murder conviction and a concurrent one to two year sentence for the conspiracy conviction.  Petitioner filed a notice of appeal with the Pennsylvania Superior Court, and on August 19, 1998, the Pennsylvania Superior Court affirmed the judgment of sentence.  Commonwealth v. Johnson, 726 A.2d 412 (Pa. Super.1998).  On February 8, 1999, the Pennsylvania Supreme Court denied a petition for allowance of appeal.  Commonwealth v. Johnson, 736 A.2d 603 (1999).

On October 7, 1999, Petitioner filed a motion under the Pennsylvania Post Conviction Relief Act ("PCRA"), 42 Pa.Cons.Stat.Ann. §9541.  In a counseled amended petition, Petitioner claimed he was denied effective assistance of counsel when trial counsel did not move to sever under Bruton v. United States, 391 U.S. 123 (1968), and when appellate counsel failed to raise this severance issue on appeal.  On February 6, 2003, the PCRA court denied the application for relief.  On April 13, 2004, the Pennsylvania Superior Court affirmed.  Commonwealth v. Johnson, 852 A.2d 1248 (Pa.Super. 2004).  The Pennsylvania Supreme Court denied the petition for allowance of appeal on February 4, 2005.  Commonwealth v. Johnson, 582 Pa. 662 (2005).

---

[2]18 Pa.C.S.A. §2502.

[3]18 Pa.C.S.A. §903.

Petitioner timely filed a *habeas corpus* petition and asserted five claims:

1.      Petitioner was denied the right to effective assistance of trial and appellate counsel where trial counsel failed to litigate a motion for severance under <u>Bruton</u> and appellate counsel failed to raise the severance issue on appeal;

2.      Petitioner was denied the right to effective assistance of counsel where counsel failed to move the trial judge to recuse himself;

3.      Petitioner was denied the right to effective assistance of counsel where trial counsel failed to call character witnesses at trial in Petitioner's defense;

4.      The Pennsylvania Superior Court's decision was contrary to and an unreasonable application of <u>Bruton</u>;

5.      Petitioner was denied the right to effective assistance of trial counsel where counsel failed to brief properly a post-verdict motion claiming that the trial court erred in allowing testimony of a protected witness whose identity had not been disclosed prior to his testifying.

Petition at 4-17.

**II. Report and Recommendation**

The Magistrate Judge recommended that the petition be denied.  Although the Commonwealth had argued the claims were not fairly presented to the state courts and were unexhausted or procedurally defaulted,[4] Magistrate Judge Rueter found the claims were without merit and denied the petition on the merits under 28 U.S.C. § 2254(b)(1)(2).  As to claims 1 and 4,

_____

[4]All Petitioner's claims asserted in this petition were raised at some time in the state courts in either post-verdict motions, appeals or in his PCRA petition.  Some of these claims were found to be waived by the trial court based on Petitioner's failure to file written briefs. Trial Ct. Op. at 3-4.  Nonetheless, the trial court conducted an extensive analysis of the facts and the issues.  Following a *pro se* appeal, a similar failure to file briefs was noted by the Superior Court, but Petitioner's appeal rights were reinstated, and the claims were considered on the merits.  <u>Comm. v. Johnson</u>, 726 A. 2d. 412, slip op. at 3.  The Commonwealth argues these claims have been procedurally defaulted, but the last state court rendering a judgment did not "clearly and expressly state" that its judgment rested on a state procedural bar.  <u>See</u> <u>Harris v. Reed</u>, 489 U.S. 255, 263 (1989).  Thus, these claims are addressed on the merits.

Judge Rueter found <u>Bruton v. United States</u> did not apply to Johnson's case because it was a

bench trial, not a jury trial, and there was sufficient evidence apart from the objectionable

statement to support the conviction.  The ineffective assistance of counsel claims were rejected

under the parameters set forth in <u>Strickland v. Washington</u>, 466 U.S. 668 (1984).

Johnson's counsel filed eleven objections to the R&R.  Upon consideration of each

objection, the court finds them to be without merit, and the recommendation of the Magistrate

Judge will be adopted, except as set forth in this Memorandum.

**III.  Standard of Review**

A district court reviews *de novo* those portions of a magistrate judge's report and

recommendation to which objection is made.  <u>See</u> 28 U.S.C. § 636(b)(1)(C).[5]

A.  <u>AEDPA Standard of Review</u>

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") provides that a

writ of habeas corpus for a person serving a state court sentence shall not be granted unless the

state court adjudication, "resulted in a decision that was contrary to, or involved an unreasonable

application of, clearly established Federal law, as determined by the Supreme Court of the United

States." 28 U.S.C. § 2254(d)(1).  A state-court decision "will certainly be contrary to our clearly

established precedent if the state court applies a rule that contradicts the governing law set forth in

our cases." <u>Williams v. Taylor</u>, 529 U.S. 362, 405 (2000).  A federal habeas court cannot grant a

_____

[5]No objection has been made with respect to the Magistrate Judge's recommendation on
Claim Five, the ineffective assistance claim regarding the surprise witness.  The Magistrate Judge
recommended this claim be denied because it was not exhausted in the state courts; the claim was
also denied on the merits because Petitioner had not met the showing of prejudice required by
<u>Strickland</u>.  There being no objection, the Magistrate Judge's decision as to this claim will be
adopted.

writ of habeas corpus under 28 U.S.C. § 2254(d)(1) just because the court independently concludes that the state court applied federal law erroneously or incorrectly; the application of federal law must be unreasonable for the writ to be granted. Id. at 411.  The state court's application of federal law is unreasonable if: (1) "the state court identifies the correct governing legal rule from [the] Court's cases but unreasonably applies it to the facts of the particular state prisoner's case"; or (2) "the state court either unreasonably extends a legal principle from our precedent to a new context where it should not apply or unreasonably refuses to extend that principle to a new context where it should apply." Williams, 529 U.S. at 407.  The petition should not be granted unless the state court decision, evaluated objectively and on the merits, resulted in an outcome that cannot be reasonably be justified under existing Supreme Court precedent.  Werts v. Vaughn, 228 F.3d 178, 197 (3d Cir. 2000), cert. denied, 532 U.S. 980 (2001).  Citation to Supreme Court cases is not required, so long as neither the reasoning nor the result of the state court decisions contradicts them.  Early v. Packer, 537 U.S. 3, 8 (2002) (per curiam); Priester v. Vaughn, 382 F.3d 394, 398 (3d Cir. 2004).

The determination of factual issues made by a state court shall be presumed correct unless a petitioner can rebut the presumption of correctness by clear and convincing evidence.  28 U.S.C. §2254(e)(1).  Review is conducted in light of the law as it existed at the time of the final state court decision, Teague v. Lane, 489 U.S. 288 (1989), unless an intervening constitutional decision announces a new "watershed" rule of criminal law with implications for the fundamental fairness of the trial proceeding.  Whorton v. Bockting, 127 S.Ct. 1173 (2007); Caspari v. Bohlen, 510 U.S. 383 (1994); Lloyd v. United States, 407 F.3d 608, 611 (3d Cir. 2005).

**IV. Discussion**

    A. <u>The Procedural Objections - Objections I and II</u>

    Petitioner's counsel objects to two procedural deficiencies in the Commonwealth's brief responding to the habeas petition.  First, counsel contends the Commonwealth failed to comply with Rule 5 of the Rules governing 2254 cases by not including the brief it filed with the state appellate court.  Pet'r.'s Obj., I.  This is not an objection to the R&R; even if true, such failure would not be material to a *de novo* evaluation of this case, especially since the state court records are available.

    Petitioner's second objection is that the Commonwealth should be required to cite the testimony supporting certain assertions made in its response.  Pet'r.'s Obj., II.  This, too, is not an objection to the R& R and is without merit.  The Commonwealth has noted in its response the references to the state court transcript, which were taken directly from the trial court opinion.  The factual references in the R&R are to the underlying trial court transcript or the opinion of the trial court, so the Magistrate Judge did not rely on any allegedly misleading responses by the Commonwealth.

    B. <u>The Bruton Claim - Objections III, IV, V, VI and IX</u>

    *1. Bruton-Richardson-Gray*.

    The Magistrate Judge recommended denying Claim 4, which asserted the Pennsylvania Superior Court unreasonably applied the Supreme Court's decision in <u>Bruton v. United States</u>, 391 U.S. at 123.  The Magistrate Judge found the requirements of <u>Bruton</u> did not apply because Petitioner was tried by a court, not by a jury.  The Magistrate Judge further found that other

independent evidence was sufficient to support Petitioner's conviction.  R&R at 7-10.

In Bruton, the Supreme Court held that a defendant is deprived of his Constitutional rights when his non-testifying co-defendant's confession naming him as a participant in the crime is introduced at their joint trial, even if the jury is instructed to consider that confession only against the co-defendant.  Bruton, 391 U.S. at 126.  The Court held that "because of the substantial risk that the *jury*, despite instructions to the contrary, looked to the incriminating extrajudicial statements in determining petitioner's guilt, admission of the [co-defendant's] confession in this joint trial violated petitioner's right of cross-examination secured by the Confrontation Clause of the Sixth Amendment."  Id.  In such circumstances, "the risk that the *jury* will not, or cannot follow instructions is so great, and the consequences of failure so vital to the defendant, that the practical and human limitations of the *jury* system cannot be ignored."  Id. at 135 (emphasis supplied).

Subsequent to Bruton, after the trial court's decision in Petitioner's case, the Supreme Court held the introduction of a redacted statement of a non-testifying co-defendant was not unconstitutional.  Richardson v. Marsh, 481 U.S. 200 (1987).  The Court refused to extend Bruton in circumstances where there was no reference to the defendant's name or existence and where defendant was incriminated inferentially.  Again, the Court focused on the *jury's* ability to following limiting instructions.  Id. at 211. The Court expressly did not opine on the admissibility of a confession in which the defendant's name was replaced with a symbol or neutral pronoun. Richardson, 481 U.S. at 211, n. 5.

The following year, the Supreme Court addressed the precise question left open in Richardson: whether a confession redacted by way of a symbol was admissible under Bruton.  The

Court concluded a redaction that replaced a defendant's name with an obvious indication of deletion, such as a blank space, the word "deleted" or a similar symbol was not permissible; such a confession fell within <u>Bruton</u>'s protection and was not admissible against a non-testifying co-defendant.  <u>Gray v Maryland</u>, 523 U.S. 185, 197 (1998).  The Court's analysis focused again on the inferences a *jury* could make from such a confession.  <u>Id</u>. at 193-196.

The decision in <u>Gray</u> was announced six months before the Superior Court ruled on Petitioner's appeal of his conviction,[6] but the Pennsylvania Superior Court did not mention <u>Gray</u> in rendering its decision to affirm Petitioner's conviction.  The Superior Court merely stated, "In this case, we have reviewed the record and studied the brief.  We conclude that the trial court's October 30, 1995 opinion carefully and correctly responds to the issues that Appellant has raised.  We therefore adopt in its entirety and affirm on the basis of the opinion of the trial court."  <u>Comm. v. Johnson</u>, slip op. at 3.  Assuming <u>Bruton</u> and <u>Gray</u> were applicable to this non-jury case, Davis' statement redacting Petitioner's name with an "X" should not have been admitted, and the Superior Court's affirmance of the conviction was arguably "contrary to" established Supreme Court precedent.  <u>Williams v. Taylor</u>, 529 U.S. 362, 405 (2000).

*2.  Applicability of Bruton to Non-Jury Trial.*

The trial court had deemed <u>Bruton</u> inapplicable to Petitioner's case because his trial was

---

[6] <u>Gray</u> was decided on March 9, 1998.  The Superior Court affirmed Petitioner's conviction on August 19, 1998.  The Petitioner has objected to the Magistrate Judge's implicit finding that <u>Gray</u> is not retroactive.  Pet'r. Obj. IV.  The Magistrate Judge did not make such a finding but only concluded that counsel was not ineffective for failing to anticipate the change in the law mandated by <u>Gray</u>.  R&R at 8, n. 2.   The issue presented here is not whether <u>Gray</u> should be retroactively applied, because the conviction was affirmed after <u>Gray</u> was decided.  Petitioner's conviction was not yet final at the time of the <u>Gray</u> decision.  <u>Cf</u>. <u>Priester v. Vaughn</u>, 382 F.2d 394, 400 (3d Cir. 2004) (<u>Gray</u> not applicable because decision was announced after petitioner's merits appeal was heard in the Pennsylvania Superior Court).

not a jury trial.  Trial Ct. Op. at 28, citing Commonwealth v. Mangan, 220 Pa. Super. 54, 281

A.2d 666 (1971).  The Pennsylvania Superior Court implicitly agreed with this finding by relying

on the trial court's opinion to affirm Petitioner's conviction.  The Magistrate Judge agreed that

Bruton is inapplicable to bench trials.  R&R, at 8-9.  Petitioner objects to this conclusion because

the rationale underlying Bruton is to ensure the reliability of evidence against a criminal defendant

by permitting confrontation through cross-examination.  He contends the unwillingness of the

Pennsylvania courts and the Magistrate Judge to apply the Bruton rule to bench trials is an

unreasonable application of a Supreme Court decision.  Pet'r. Obj. III, IV and V.  In support of his

claim that Bruton and Gray apply to bench trials, Petitioner relies on cases arising out of the

United States Code of Military Justice.  Pet'r Obj. III.

Although the parties have cited no Supreme Court or Third Circuit authority directly on

point, and this Court has not discovered any, other appellate courts have held the Bruton rule–and

by logical extension, the Gray rule---inapplicable to bench trials.  "To apply Bruton to bench trials

would be to conclude that judges, like jurors, may well be incapable of separating evidence

properly admitted against one defendant from evidence admitted against another."  Rogers v.

McMackin, 884 F.2d 252, 252-56 (6th Cir. 1989), cert. denied, 493 U.S, 1061 (1990).  Accord

United States v. Cardenas, 9 F.3d 1139, 1154-55 (5th Cir. 1993), cert denied, 511 U.S. 1134

(1994); United States ex rel. Faulisi v. Pinkney, 611 F.2d 176, 178 (1st Cir. 1969), cert. denied,

397 U.S. 950 (1970);  Cockrell v. Oberhauser, 413 F.2d 256, 258 (9th Cir. 1969); Commonwealth

v. Mangan, 220 Pa. Super. 54 (1971).  See also 21A Wright & Graham, Federal Practice and

Procedure: Evidence 2d, §5064.2 at 290 (2006 Update) ("[B]ecause Bruton seeks to protect the

defendant against the inability of the jury to understand or abide by limiting instructions, the

Bruton doctrine does not apply in cases tried to the court.").

Military appellate courts confronting the question have concluded the Bruton rule does not apply in cases tried to a military judge, without court members.  See e.g., United States v. McConnico, 7 M.J. 302, 304 (Ct. Mil.App. 1979) (Bruton rule not implicated when trial is held before military judge, even when same military judge previously ruled on the statement's admissibility).

This conclusion that Bruton and its progeny do not apply to bench trials is premised on the belief that a trial judge is able to rest his verdict solely on admissible evidence.  U.S. v. Cardenas, 9 F.3d at 1154.  A presumption arises that improper evidence is given no weight, and the court considers only properly admitted relevant evidence in rendering its decision.  However, this "presumption of regularity" does not apply where it is plain from the court's findings that it relied on inadmissible evidence in reaching its decision.  West v. Jones, No. 04-CV-40199-FL  2006 WL 508652 at *3 (E.D. Mich. Feb. 28, 2006); see Cardenas, 9 F. 3d at 1155-56; cf. Lee v Illinois, 476 U.S. 530 (1986) (conviction in non-jury trial reversed where the trial court expressly relied on a non-testifying co-defendant's confession).  Thus, if the state trial court actually relied on Davis' statement in determining Petitioner's guilt, the presumption of regularity would not apply, and the restrictions of Bruton and Gray might apply, even to this non-jury case.

The trial court asserted that it "predicated its decision solely upon the properly admitted statement of [Petitioner] and the other directly relevant evidence presented by the Commonwealth," Trial Ct. Op. at 30, but the parties agree the trial court opinion did refer to one portion of Davis' redacted statement.   In discussing the evidence of a conspiracy between Petitioner and Davis, the trial court noted, "After the deceased fell to the ground, [Petitioner]

-11-

immediately patted down the deceased's body in an obvious attempt to confiscate his jewelry and other valuables." Trial Ct. Op. at p. 13. This evidence came from Davis' statement and was not found anywhere else in the record. Pet'r Obj. at 6; Commw. Response to Petition at 9. We assume the "presumption of regularity" normally accorded to a bench trial did not attach, and the restrictions of Bruton/Gray were applicable.

  3.  *Harmless Error/Sufficiency of Admissible Evidence.*

Even assuming the principles of Bruton/Gray were violated at Petitioner's trial, the conviction is not automatically invalidated if the error was harmless. "[A] Bruton violation will not result in a reversal where independent, 'properly admitted evidence of [the defendant's] guilt is so overwhelming, and the prejudicial effect of the co-defendant's admission so insignificant by comparison, that it is clear beyond a reasonable doubt that the improper use of the admission was harmless error.'" Monachelli v. Warden, SCI Graterford, 884 F. 2d 749, 753 (3d Cir. 1989), quoting Schneble v. Florida, 405 U.S. 427 (1972); see also Delaware v. VanArsdall, 475 U.S. 673682, n.5 (1986); Harrington v. California, 395 U.S. 250 (1969).

In evaluating whether an error is harmless in a particular case, a court must consider various factors, including:   the importance of the witness' testimony in the prosecution's case; whether the testimony was cumulative; the presence or absence of evidence corroborating or contradicting the testimony of the witness on material points; and the overall strength of the prosecution's case. Delaware v. VanArsdall, 475 U.S. at 684. Here, the prejudicial impact of that portion of the co-defendant's statement relied on by the trial court was not significant, and the adequacy of the Commonwealth's other admissible evidence was sufficient to support the Petitioner's conviction.

-12-

In its ruling on post-trial motions, the trial court conducted an extensive review of the sufficiency of the evidence against Petitioner.  See Trial Ct. Op.  at 4-23.  It found the criminal conspiracy charge supported by cumulative evidence.  Vernell Washington, a witness present outside the club the night of the shooting, had heard a conversation between Petitioner and Davis about how they "wanted the guy with the money."  N.T. 12/16/91, at 126-132, 139.   A police officer testified that the victim's companion, DeLoach, was wearing "a lot of gold jewelry", N.T. 12/12/91 at 14.  This intention to commit a robbery was corroborated by the testimony of Mansur Rashid Harley that Petitioner told him the following day that he and Davis had gone to the club in order to "get a brody, a robbery, to get some money."  N.T. 12/16/91, at 155.   Three eyewitnesses observed Petitioner walking behind Davis as he was crossing the street and holding a concealed gun.  Although Petitioner was 10 to 12 feet behind his co-defendant, N.T. 12/12/91, at 13-15, 17, 28, he was following at "more or less a trot".  N.T. 12/12/91, at 16, 24.   The evidence showed Petitioner knew Davis was carrying a gun; he even admitted the type of weapon used.  N.T. 12/12/91 at 99, 105.  All the witnesses made in-court identifications of the defendant.  The trial court considered Petitioner's fleeing the scene with Davis after the shooting as consciousness of guilt.

The trial court felt the record was "amply sufficient" to establish the three elements required to prove a criminal conspiracy under Pennsylvania law:  a common understanding; a shared criminal intent to facilitate the commission of the crime; and at least one overt act. Petitioner's pat down of the victim, the only evidence derived from Davis' statement, was cited as an overt act in furtherance of the conspiracy's objective.  Trial Ct. Op. at 13.  But other overt acts were noted, especially the acts of shooting the victim and fleeing the scene.  Although the

-13-

shooting was committed by Petitioner's co-defendant, an overt act need not be performed by the defendant; a conviction may rest on the overt act of an alleged co-conspirator.  Commonwealth v. Moore, ___ Pa. ___, 913 A.2d 862 (2006) (per curiam), citing Commonwealth v. Kennedy, 499 Pa. 389 (1982); see also 18 Pa.C.S.A. §903(e).   Even if the trial court had not mentioned the pat-down by Petitioner as an overt act, there was sufficient evidence of other overt acts to support the conspiracy conviction.

In reviewing the sufficiency of the evidence of second degree murder, the trial court reviewed much of the same evidence.  It found Petitioner was liable for the acts of his co-conspirator and vicariously responsible for the criminal acts of his accomplice.  The trial court noted the question of whether Petitioner was an accomplice to Davis' killing of the victim "is far from troublesome."  Trial Ct. Op. at 18-19.  The trial court relied on:  Petitioner's discussion with Davis of a plan to rob the "guy with the money"; his accompanying Davis across the street to where the deceased was standing when Davis was conspicuously wielding the murder weapon; and his fleeing the crime scene with Davis after the shooting.  The evidence from Davis' statement, that Petitioner patted down the victim, was not considered in the trial court's analysis of the murder charge.

The trial court carefully considered the claim that the admission of Davis' statement was prejudicial:

> [T]he admission of Davis' statement did not, in any way, influence the outcome of this defendant's trial since the independent evidence represented against him was amply sufficient to support his verdicts...Although the evidence against the defendant in the case at bar is not overwhelming, it was more than adequate, without the help of the co-defendant statement, to convict him.  This Court, after evaluating the record as a whole and pursuant to its factfinding functions, properly found that the defendant had conspired to rob the deceased and was thus responsible for his murder at the hands of the co-defendant during the perpetration of that felony.  While the utilization of Davis' statement

-14-

would have made the determination of Johnson's guilt a less arduous task, this Court, even if the statement was excluded, would have found the Commonwealth's case no less persuasive. Therefore, after balancing the strength of the Commonwealth's case against the minimal and insignificant prejudicial effect of the codefendant's confession, this Court contends that its admission was harmless.

Trial Ct. Op. at 31-32.

The portion of Davis' statement expressly relied on by the trial court was not crucial to the prosecution's case. This evidence was cumulative on whether there had been a conspiracy to commit a robbery, and there was other corroborating evidence on the material points. Although the prosecution's case against Petitioner was not "overwhelming", the reliance on Davis' statement was not essential to the court's ultimate determination of Petitioner's guilt. The admission of the improperly redacted statement was harmless error and is not a basis for habeas relief.[7]

The Constitution entitles a criminal defendant to a fair trial, not a perfect one, Delaware v. VanArsdall. 475 U.S. at 681. A reviewing court in making a harmless error inquiry does not become a second jury determining whether the defendant is guilty. Neder v. United States, 527 U.S. 1 (1999). On habeas corpus review, determinations of factual issues made by a state court are presumed correct; petitioner must rebut the presumption of correctness by clear and

---

[7]Petitioner objects to the Magistrate Judge's assertion that three eyewitnesses testified to Petitioner's intention to commit a robbery that evening. Pet'r Obj. VI. Petitioner contends this assertion is unsupported by the trial record and argues that there was no corroborative evidence of the crime other than Davis' improperly redacted statement, in violation of the *corpus delicti* rule. This argument is without merit since the testimony of at least two witnesses corroborated Petitioner's intention to commit a robbery. Petitioner also contends that, without Davis' statement, there is a reasonable probability Johnson was merely present and fled, which would be insufficient to establish conspiracy or second degree murder. Commonwealth v. Hargrove, 745 A.2d 20 (Pa. Super. 2000) (mere presence at the scene insufficient to sustain conviction). Here, as the trial court pointed out, there was more than mere presence.

convincing evidence.  28 U.S.C. 2254(e)(1).  The trial court conducted a thorough review of the

facts and was present to judge and weigh the credibility of the witnesses and the evidence.  While

the totality of the circumstantial evidence against Petitioner may not have been "overwhelming"[8],

the trial court found it was "more than adequate", "amply sufficient" and "far from troublesome."

Trial Ct. Op. at 11, 15, 18-19 and 23.  The trial court stated, "To conclude, after weighing and

evaluating all of the Commonwealth's evidence to be found in this record, this Court strongly

asserts that this case is not one in which a new trial should be awarded based on a weight of the

evidence claim."  Trial Ct. Op. at 23.  Petitioner has not provided clear and convincing evidence

to rebut the presumption of correctness, and this Court should not substitute its judgment for that

of the trial court.

    C.  The Ineffective Assistance of Counsel Claims

    The right to effective counsel is guaranteed by the Sixth Amendment.  Yarborough v.

Gentry, 540 U.S. 1, 5 (2003).  In Strickland v. Washington, 466 U.S. 668 (1984), the Supreme

Court established a two-pronged test for ineffectiveness claims.  First, the defendant must show

that counsel's performance was deficient, *i.e.*, that counsel's representation fell below an objective

standard of reasonableness.  Id. at 687-88.  Second, the defendant must show that the deficient

performance prejudiced the defense by establishing a reasonable probability that "but for

counsel's unprofessional errors, the result of the proceeding would have been different."  Id. at

694.  See also Wiggins v. Smith, 539 U.S. 510 (2003); United States v. Booth, 432 F.3d 542 (3d

Cir. 2005).  "Unless a defendant makes *both* showings, it cannot be said that the conviction or

sentence resulted from a breakdown in the adversary process that renders the result unreliable."

---

    [8]Petitioner objected to the Magistrate Judge's characterization of the evidence as
"overwhelming."  See R&R at 13; Pet'r. Obj. X.

Strickland, 466 U.S. at 687 (emphasis added).  The defendant bears a heavy burden to prove

ineffective assistance of counsel in light of the strong presumption that the counsel's conduct was

within the range of reasonable professional legal assistance.  United States  v. Robles, 814 F.

Supp. 1233, 1244 (E.D. Pa. 1993).

   1.  *Ineffectiveness for Failing to Request Severance - Claim 1, Pet'r Obj. VII, VIII.*

   Petitioner objects to the Magistrate Judge's recommendations with respect to whether trial

counsel was ineffective for failing to request a severance. Pet'r. Claim 1; Pet'r. Obj. VII; Pet'r.

Obj VIII.  The Magistrate Judge concluded that:  1) the failure to request a severance was a

legitimate trial strategy; and 2) the failure to request a severance was not prejudicial.

   As the Magistrate Judge noted, trial counsel testified before the trial court regarding

several post-trial motions claiming ineffective assistance of counsel.  When asked why he failed to

request a severance, counsel stated that he did not feel the evidence would support a finding of

guilt on the part of Petitioner because the evidence all pointed to co-defendant Davis.  N.T.

11/19/93 at 23-29.  Based on this, Petitioner argues, "it is hard to understand how the failure to

request a severance could benefit Johnson."  Pet'r. Obj. at 15.  However, the test for

ineffectiveness is not whether counsel's strategy would benefit a defendant; it is whether

counsel's performance was deficient or caused prejudice.  Strickland, 466 U.S. at 689.  Counsel's

proffered reason for not requesting a severance was not unreasonable.  Id.

   In addition, a motion for severance would most likely have been futile.  Pennsylvania law

favors joint trials, particularly trials involving multiple defendants where much of the same

evidence is applicable to all defendants.  Commonwealth v. Jackson, 451 Pa. 461 (1973).  Federal

law also favors joint trials. "Joint trials play a vital role in the criminal justice system....Joint trials

generally serve the interests of justice by avoiding inconsistent verdicts and enabling more accurate assessment of relative culpability – advantages which sometimes operate to the defendant's benefit." Richardson v. Marsh, 481 U.S. at 210.  Defendant is not entitled to severance merely because he has a better chance of acquittal in a separate trial. Zafiro v. United States, 506 U.S. 534, 540 (1993).  In view of the strong preference for joint trials and the unlikelihood the motion would have been successful, counsel's decision not to request a severance was reasonable and entitled to deference. Strickland, 466 U.S. at 689.

2. *Ineffectiveness in Failing to Request Recusal - Claim 2, Obj. XI.*

Johnson claims the trial judge was biased, presumably because he presided over the suppression hearing.  Claim 2; Pet'r. Obj. XI.  He contends trial counsel was ineffective when, after the judge heard Davis' redacted statement at a pre-trial suppression hearing, he failed to move for the judge's recusal from the subsequent bench trial.

Prior to trial, the judge acknowledged he had been exposed to some evidence in the co-defendant's pre-trial motion to suppress but he stated he did not remember exactly what the evidence was.  N.T. 12/10/91, at 20.  After being reminded, the judge informed defendants of their right to request recusal,[9] but no such request was made.  Id.

Recusal is required only if substantial doubt as to the judge's ability to preside impartially has been demonstrated.  Commonwealth v. Reyes, 582 Pa. 317 (2005).  Mere participation by a judge at an earlier stage of the proceeding neither suggests actual impropriety nor the appearance of impropriety.  Commonwealth v. Boyle, 498 Pa. 486 (1982) (no recusal required where trial judge previously presided in homicide trial of named defendant), cited approvingly in Comm. v.

---

[9]The colloquy was actually directed at co-defendant Davis, but Petitioner was present at the time.

Reyes, 582 Pa. at 333; see also Liteky v. United States, 510 U.S. 540, 555 (1994) ("[J]udicial rulings alone almost never constitute a valid basis for a bias or partiality motion.").  In light of the broad discretion of the trial judge, a request for recusal would not have been likely to succeed; counsel cannot be deemed ineffective for failing to make a motion with little likelihood of success.  The Magistrate Judge pointed out, even if the recusal motion had been made and granted, recusal would not have removed the evidence from the case.  The same statement, redacted in compliance with Pennsylvania law as it stood at that time, would have been presented to a different judge.

For these reasons, this ineffective assistance claim is denied.

3.  *Ineffectiveness for Failure to Call Character Witnesses - Claim 3; Pet'r Obj. X.*

To claim successfully ineffectiveness for failure to call a witness, Petitioner had to prove: (1) the existence and availability of the witness; (2) counsel's awareness of or duty to know of the witness; (3) the witness' willingness and ability to cooperate and appear; and (4) the necessity of the proposed testimony in order to avoid prejudice.  Commonwealth v. Hall, 701 A.2d 190 (Pa. 1997); Commonwealth v. Crawley, 541 Pa. 408 (1995).  Petitioner's counsel spoke with several people about testifying as character witnesses.  N.T. 11/3/93, at 31-34.  Because they were reluctant to take the stand, counsel decided not to call those individuals to testify.  Counsel's decision not to call them should "be considered sound trial strategy," Strickland, 466 U.S. at 689, and is entitled to great deference.

Even if counsel were ineffective, the prejudice requirement of Strickland has not been satisfied. There is no showing that such witnesses would have been particularly helpful.  In fact, certain character witnesses did testify at the post-verdict hearing, and the trial court found their

testimony "to be incredible."  Trial Ct. Op. at 45.

Because defendant has not shown ineffectiveness or prejudice in failing to call character witnesses, the Magistrate Judge's recommendation that this claim be denied on the merits is approved.

### V.  Conclusion

The R&R is approved and adopted, except for the conclusion that Bruton is inapplicable to this particular non-jury trial.  The petition for writ of habeas corpus will be denied.  As no reasonable jurist would debate the court's disposition of Petitioner's claims, a certificate of appealability should not issue.  See Slack v. McDaniel, 529 U.S. 473, 484 (2000); Lambert v. Blackwell, 387 F.3d 210, 230 (3d Cir. 2004).  An appropriate order will issue.

_____

S.J.

## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **GARY JOHNSON** | **:** | **CIVIL ACTION** |
| | **:** | |
| **v.** | **:** | |
| | **:** | |
| **FRANKLIN TENNIS** | **:** | **NO. 05-0778** |

## ORDER

      **AND NOW**, this 12th day of March, 2007, upon consideration of Magistrate Judge Reuter's Report and Recommendation, Petitioner's objections thereto, and all other relevant papers, for the reasons set forth in the accompanying memorandum, it is **ORDERED**:

      1. The Report and Recommendation (Paper #10) is **APPROVED, except as set forth in the accompanying Memorandum**.

      2.  All objections filed by Petitioner (Paper #16) are **OVERRULED**.

      3.  The Petition for Writ of Habeas Corpus (Paper #1) is **DENIED and DISMISSED** with prejudice.

      4.  Because Petitioner has failed to make a substantial showing of the denial of a Constitutional right, there is no basis for issuing a certificate of appealability.

           /s/ Norma L. Shapiro_____

                                            S.J.